**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
ROBERT GIACOPELLI,

                         Plaintiff

       -against-

THE INCORPORATED VILLAGE OF
MALVERNE,

                        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
09-CV-848(ADS)(AKT)

## APPEARANCES

**The Law Office of Steven A. Morelli, P.C.**
*Attorney for the Plaintiff*
1 Old Country Road, Suite 347
Carle Place NY, 11514
      By: Steven A. Morelli, Esq., Of Counsel

**Siler & Ingber, LLP**
*Attorneys for the Defendant*
301 Mineola Boulevard
Mineola, NY 11501
      By: James J. Keefe, Esq., Of Counsel

**SPATT, District Judge**

      On February 27, 2009, Robert Giacopelli (the "Plaintiff"), a retired member of the

Malverne Police Department, commenced this lawsuit against the Incorporated Village of

Malverne (the "Defendant"), alleging discrimination due to his disability and retaliation

in response to his union membership and political activities. The Defendant has now

moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Fed.

R. Civ. P. 56(c)") on the grounds that the Plaintiff's 42 U.S.C. § 1983 claim is untimely

and that all of the claims are without merit. For the reasons that follow, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

### A. Facts Relating to the Alleged Failure to Promote Giacopelli to Lieutenant

On October 4, 1989, the Plaintiff Giacopelli was hired by the Malverne Police Department (the "Department"). At that time, he also became a member of the local police union, the Malverne Police Benevolent Association ("PBA"). In 1990, Giacopelli joined the PBA Executive Board, and served as the Secretary and Vice President until 1999. However, in or about February 1999, the Plaintiff alleges that Glen Jacobsen, the Defendant's eventual Chief of Police, told him that he would have to resign as a member of the PBA in order to be promoted to Sergeant of the Department. According to the Plaintiff, once he resigned from his PBA position, he was then promoted to Sergeant in June 1999.

On September 20, 2003, Giacopelli took the Nassau County Civil Service Exam to be eligible for a Lieutenant position. He was notified by then Chief of Police Jacobsen and Village Trustee William Malone that he was ranked number one on the civil service list as a result of his score on the examination. The Plaintiff claims he was told by these two individuals that he would be promoted to Lieutenant when the position became available. In addition, Giacopelli alleges that the Mayor of Malverne, Anthony Panzarella, also told him that the "next Lieutenant position is going to be yours." (Complt. at ¶ 13.) However, the Plaintiff also acknowledges that the Defendant "has the option once the list comes out to promote any one of the top three scorers on a test." (Giacopelli Dep. at 13:14–18).

In or around January 2005, Andrew Chernoff announced his candidacy for Malverne Village Trustee. He challenged incumbents Joseph Hennessy and Patricia McDonald. The Plaintiff became openly and actively involved in Chernoff's campaign along with many members of the PBA by placing signs on his property, distributing literature, and placing phone calls to residents. On Election Day, the Plaintiff transported voters in Chernoff's truck. Ultimately, Chernoff lost the election to the incumbent Hennessy in March 2005. The Plaintiff alleges that in the weeks following Hennessy's victory, he approached Hennessy several times to congratulate him. Plaintiff alleges that Hennessy simply ignored him at first, but eventually verbally attacked and threatened him for his support of Chernoff.

On April 15, 2005, the Plaintiff suffered a broken leg on a Malverne police motorcycle while stopping a traffic violator and took a temporary leave of absence. Shortly thereafter, a Lieutenant position became available and Chief of Police Jacobsen again told the Plaintiff that he would receive the promotion. However, on May 19, 2005, the Village Trustees promoted John Aresta to the position. Aresta was ranked only third on the eligible list but he did not participate in the PBA's campaign activities on behalf of Chernoff. This promotion decision was within the authority of the Board of Trustees. (Giacopelli Dep. at 32:15-16.)

The Plaintiff asserts that the reason he was not promoted to Lieutenant was because of his longstanding PBA membership; his campaign activities in favor of Chernoff; and his injury. In support of this reasoning, the Plaintiff cites to another promotion that took place on the same day when a police officer who was a Chernoff supporter was passed over for a promotion in favor of a non-supporter.

As a result of this alleged discrimination and retaliation, the Plaintiff filed a complaint with the New York State Division of Human Rights on August 3, 2005. In the complaint, the Plaintiff alleged that he was passed for a promotion because of his injury. (Giacopelli Dep. at 39:14-17.) The Plaintiff later withdrew this complaint.

**B. Facts Relating to the Plaintiff's Retirement and Retirement Benefits**

Between January 2006 and May 2006, the Plaintiff claims he had ongoing discussions with Chief Jacobesen and Trustee Malone about the possibility of coming back to work in a desk position. The Plaintiff contends that he urged the Department not to file his disability retirement papers with the State of New York, which they were entitled to do on April 25, 2006, after the Plaintiff had been out on disability for one year.

Nevertheless, in or about May – June 2006, the Defendant unilaterally filed his retirement papers. According to the Plaintiff, they did so "for the purpose of removing Plaintiff from the Department so it could promote other, non-active Union members to higher-ranking positions and for the purpose of punishing Plaintiff for his exercise of his constitutional rights." (Complt. at ¶ 34.) Subsequently, in July 2006, the Plaintiff submitted his own request for retirement "as a result of being passed over for promotion and feeling as if his career was coming to an end." (Complt. at ¶ 35.) He did not do so "under protest." (Giacopelli Dep. at 56.)

The Plaintiff claims that the discrimination and retaliation continued in that the Defendant interfered with his retirement benefits as punishment for his union and political activities. For example, on July 24, 2007, the Defendant unilaterally set the Plaintiff's date of retirement as August 3, 2007. By doing so, the Plaintiff asserts that he did not have the ability to provide the requisite 30 days advance notice of retirement

pursuant to his union contract in order to receive Terminal Leave Pay as a lump sum. Instead, the Plaintiff was forced to accept the sum as being paid out over the course of a two-year period. (Complt. at ¶ 40.) As a second example, upon retirement, the Defendant initially issued a memorandum on August 1, 2007, which included calculations of the Plaintiff's benefits for Accumulated Sick Leave, Terminal Leave, Vacation Days, and Compensatory Time at $193,188.97. However, as another alleged act of retaliation, the Defendant recalculated the Plaintiff's benefits and reduced them to $138,224.92. (Complt. at ¶ 44.)

The Plaintiff further claims that Sergeant Stanley Kidd told him that he would receive full benefits and hence the money he was entitled to if he denounced the PBA. (Complt. at ¶ 44.) However, the Plaintiff refused. The Village Board ultimately voted to pay $138,224.92 in retirement benefits in accordance with the second memorandum, but the Plaintiff alleges that he was given approximately $5,000 less than that amount.

## C. The Plaintiff's Claims

The Plaintiff asserts claims for discrimination and retaliation on a number of grounds. First, he asserts that he was passed over for the Lieutenant promotion in May 2005 because he supported the losing candidate in the Village Trustee election and because he was disabled after an accident in the line of duty. The Plaintiff further alleges that the Village unilaterally forced him to retire and manipulated his retirement benefits as punishment for his activities in the union.

Also, the Plaintiff states a claim pursuant to 42 U.S.C. § 1983, alleging that the Defendant retaliated against him for exercising his free speech rights. In addition, the Plaintiff asserts a claim pursuant to New York Civil Service Law § 209-a for interference

with his participation in the PBA and a claim pursuant to New York Labor Law § 201-d(2)(d) with regard to his alleged constructive discharge. Finally, the Plaintiff asserts a claim under the New York Human Rights Law, codified in Executive Law § 296, for discrimination based upon the Plaintiff's disability.

### D. The Present Motion

The Defendant moved for summary judgment on March 14, 2011 on a number of different grounds.

First, the Defendant contends that the federal 42 U.S.C. § 1983 claim was not timely asserted. The acts which instigated the alleged retaliation, such as the Chernoff campaign and the Plaintiff's injury while on duty, as well as the act of retaliation when the Defendant failed to promote the Plaintiff to Lieutenent, all took place prior to May 20, 2005. Because this action was commenced on February 27, 2009, the Defendant claims that the Plaintiff's cause of action was not asserted within the relevant three year statute of limitations. In addition, the Defendant claims that any state law claims are barred pursuant to New York General Municipal Law 50(i) ("NY Gen. Mun. Law.").

The Defendant also contends that the Plaintiff cannot establish a causal connection between any alleged acts of retaliation and his union or political activities because the Defendant always acted reasonably and within its lawful discretion. For example, the Defendant claims that there was no manipulation of Giacopelli's retirement benefits, but rather, the benefits were recalculated once it was realized that the Plaintiff could not accumulate sick pay, vacation time, and holiday pay during his leave of absence from April 2005 through August 2007.

# II. DISCUSSION

## A.  Legal Standard for Summary Judgment

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)).  However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348.  Summary judgment is appropriate when the moving party can show that "little or no evidence may

7

be found in support of the nonmoving party's case." <u>Gallo v. Prudential Residential</u>

<u>Servs.</u>, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

"The court's responsibility in assessing the merits of a summary judgment motion

is not to try issues of fact, but rather to 'determine whether there are issues of fact to be

tried.' " <u>Giannattasia v. City of New York,</u> No. 09 Civ. 0062, 2011 U.S. Dist. LEXIS

113636, at *7 (E.D.N.Y. Sept. 30, 2011) (citing <u>Sutera v. Schering Corp.</u>, 73 F.3d 13, 16

(2d Cir. 1995)).

**B.  Whether the Plaintiff's 42 U.S.C. § 1983 Claim Is Timely**

As stated above, the Plaintiff asserts a claim pursuant to Section 1983, alleging

that the Defendant retaliated against him for exercising his right to freely associate with

the Malverne PBA and his right to engage in political speech.  The Defendant moves for

summary judgment on the ground that this claim is time barred because the promotional

decisions relied upon by the Plaintiff as adverse actions are barred by the statute of

limitations.  The Plaintiff concedes that any claims based on the Defendant's actions

which occurred prior to February 27, 2006 would be untimely.  However, the Plaintiff

argues that discriminatory events occurring before this time may be considered in support

of the Plaintiff's timely claims.  For example, although the failure to promote Giacopelli

to Lieutenant occurred prior to February 27, 2006, the Plaintiff argues that this event is

nevertheless relevant to the subsequent and timely adverse actions.

There is no dispute that the statute of limitations for a Section 1983 claim arising

in New York is three years.  <u>Rivera v. Governor of New York</u>, 92 Fed. App'x 25, 26 (2d

Cir. 2004). "While state law supplies the statute of limitations for claims under § 1983,

federal law determines when a federal claim accrues. The claim accrues when the

plaintiff knows or has reason to know of the harm." <u>Van Wormer v. City of Rensselaer</u>, 293 Fed. App'x 783, 783 (2d Cir. 2008) (quoting <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994)).

Except for the claims relating to Giacopelli's retirement and related benefits, the other alleged discrete acts of discrimination accrued more than three years prior to his filing this action. Thus, any claims based on instances of retaliation that occurred before the limitations period are time-barred. <u>See Barorr v. New York City Dep't of Educ.</u>, 362 Fed. Appx. 157, 160 (2d Cir. 2010). Accordingly, the Plaintiff cannot assert a Section 1983 cause of action with regard to the Defendant's failure to promote him to Lieutenant. Although the Plaintiff may argue that the failure to promote is part of a continuing pattern of retaliation, the continuing violation doctrine does not apply to a police officer's claims of retaliation in violation of his free speech rights, so as to make a Section 1983 action timely. <u>See Crossland v. Safir</u>, 54 Fed. App'x 504, 504 (2d Cir. 2002).

However, to the extent that the Plaintiff argues that the retaliatory act that forms the basis of his Section 1983 action is his forced retirement, then the Court finds that Section 1983 claim is timely. The retirement claim accrued in June 2006 when the Plaintiff learned that the Defendant filed his retirement papers. <u>See DeVito v. Inc. Village of Valley Stream</u>, 991 F. Supp. 137, 140 (E.D.N.Y.1998) (finding that plaintiff's claim that he was forced to resign from his employment position with defendant village in violation of his civil rights under § 1983 accrued when the plaintiff was offered retirement in September 1991, rather than on the last day of plaintiff's employment on November 29, 1991); <u>see also Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999) (holding that a claim accrues when the plaintiff knows "or had reason to know of

the injury serving as the basis for his claim"). In addition, the dispute regarding retirement benefits accrued in August 2007, when the Village Trustees passed a resolution authorizing payment of retirement benefits to the Plaintiff. In both situations, the Plaintiff's action was filed within the three-year Section 1983 statute of limitations period.

Therefore, the Defendant's motion for summary judgment is denied on this ground that the Plaintiff's Section 1983 claim is untimely. Insofar as the Plaintiff's claim is based on the forced retirement and wrongful manipulation of his benefits, the Plaintiff's Section 1983 claim is timely asserted.

## C.    As to the Plaintiff's § 1983 First Amendment Claim

The next issue raised by the Defendant's summary judgment motion is the substantive merits of the Plaintiff's Section 1983 First Amendment speech claim.

The Plaintiff Giacopelli bases his Section 1983 speech claim on the Defendant's alleged retaliation for the exercise of his First Amendment rights. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

The parties here do not dispute that the Defendant was acting under color of state law. The question presented, therefore, is whether the Defendant's conduct deprived

Giacopelli of the rights he asserts under the First Amendment.  The Plaintiff claims that he was retaliated against by the unilateral filing of his retirement papers and the manipulation of his benefits, for two types of First Amendment activity: (1) his membership and participation in the Malverne PBA; and (2) his campaign activities in favor of Chernoff.

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  Where a plaintiff is a public employee and brings a retaliation claim based on the First Amendment, as in the present case, that plaintiff must put forth evidence that demonstrates the following in order to establish a *prima facie* case: "(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[ ] on a matter of public concern; (2)[he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision."  Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir. 2008).  However, a Defendant may still "escape liability if [it] can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression."  Id.

The Defendant contends that the Plaintiff's First Amendment retaliation claim cannot survive summary judgment because: (1) the Plaintiff did not suffer an adverse employment action; and (2) the Plaintiff cannot show a nexus between any protected

activity and the claimed adverse employment action, so that his speech was not a substantial or motivating factor. The Defendant does not appear to contest whether the speech the Plaintiff raises is constitutionally protected. (Def. Reply Mem. at 1.) After careful consideration of the record under the applicable summary judgment standard, the Court finds that summary judgment dismissing the First Amendment retaliation claim is granted, but only with regard to the Plaintiff's retirement benefits.

### 1. Speech as a Matter of Public Concern

Speech is on a matter of public concern and therefore a protected activity "if it relates 'to any matter of political, social, or other concern to the community.' " Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). In analyzing whether speech addresses a matter of public concern, courts must "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).

In the present case, there is no dispute that the Plaintiff's exercise of free speech with regard to the Chernoff campaign was political in nature and addressed a matter of public concern and is therefore protected. See Connick, 461 U.S. at 146 (stating that speech is a matter of public concern and is therefore protected if it relates "to any matter of political, social, or other concern to the community"). The Defendant does not dispute that the Plaintiff's political activities, undertaken both as a private citizen and in connection with his union membership, were protected. See Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir. 2003) (quoting Connick, 461 U.S. at 146) ("speech

on 'any matter of political, social or other concern to the community' is protected by the First Amendment"); see also Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005).

Furthermore, this Court finds that the Plaintiff's union membership also satisfies the public concern element. Although the Second Circuit has not decided whether "pure union membership" without union activity satisfies the public concern requirement, see Donovan, 547 F. Supp. 2d at 218, "several courts have determined that union membership in and of itself satisfies the public concern requirement. Id. (citing Scott v. Goodman, 961 F. Supp. 424, 435 (E.D.N.Y. 1996), aff'd 191 F.3d 82 (2d Cir. 1999) and Maglietti v. Nicholson, 517 F. Supp. 2d 624, 635 (D. Conn. 2007)). Moreover, to the extent that the Plaintiff claims retaliation for his activities connected with the union, beyond mere membership, the Second Circuit has held that "[t]here is no doubt that retaliation against public employees solely for their union activities violates the First Amendment." Clue v. Johnson, 179 F.3d 57, 60 (2d Cir. 1999).

### 2. Adverse Employment Action

"In the First Amendment context . . . plaintiffs need only show that the retaliatory conduct in question 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" Nixon v. Blumenthal, 409 Fed. App'x 391, 392 (2d Cir. 2010) (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)). "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Frisenda, 775 F. Supp. 2d at 510 (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). "However, 'lesser actions may also be considered adverse employment actions.'" Id.; see also Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly

minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." (citing <u>Bernheim v. Litt</u>, 79 F.3d 318, 324-25 (2d Cir. 1996)).

As set forth above, the Plaintiff's retaliation claim, if based on the Defendant's failure to promote him to Lieutenant, is clearly time-barred. Therefore, the Plaintiff's retaliation claim must be based on the Defendant's unilateral filing of his retirement papers and the subsequent alleged miscalculation of his retirement benefits.

### a. Unilateral Retirement Filing

With regard to the retirement filing, the Defendant claims that there is no genuine issue of material fact with respect to whether there was an adverse employment action because even though the Defendant filed retirement papers on behalf of the Plaintiff, the Plaintiff subsequently filed his own retirement papers, not under protest. On the other hand, the Plaintiff claims that he only put himself in for retirement because of his subjective conclusion that his career was over.

The Court finds there to be a genuine issue of material fact as to whether the alleged retaliatory act of the Defendant's unilateral retirement filing constituted an adverse employment action. <u>See Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004) (holding that, where a plaintiff is public employee, a dispute as to whether the alleged retaliatory act was an adverse employment action raised a question of fact "that should have been reserved for a jury"). A unilateral filing of retirement papers can constitute an involuntary retirement, which has been found by the Second Circuit to be an adverse employment action. <u>See Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001) ("Giordano's involuntary retirement from the NYPD plainly falls within the scope of 'adverse employment action'"); <u>Wallace v. Suffolk County Police Dep't</u>, No. 04

Civ. 2599, 2010 WL 3835882, at *2 n.2 (E.D.N.Y. Sept. 24, 2010) (submitting eight potential adverse employment actions to the jury, including the premature submission of the Plaintiff's retirement papers); Scotti v. County of Nassau, 2005 WL 3670913, at *5 (E.D.N.Y. 2005) ("Clearly, the defendants' actions in forcing plaintiff into mandatory retirement, by unilaterally submitting his retirement papers, constitutes an adverse employment action.").  Although the Plaintiff filed his own retirement papers, he claims he did not do so voluntarily.  (Pl. 56.1 at ¶ 6.)  In particular, the Plaintiff claims that he did so only because "if any individual leaves the Defendant's employ, a letter or resignation is a requirement even when they're put out on retirement."  (Pl. 56.1 at ¶ 6(a).)

Thus, whether the unilateral retirement filing constitutes an adverse employment action presents a question of fact that is proper for a jury determination.

### b.  Retirement Benefits

With regard to the calculation of the retirement benefits, the Plaintiff claims that the Defendant purposely manipulated the award to reflect a lower amount and this constitutes another adverse employment action.  In response, the Defendant claims that the recalculation cannot be an adverse employment action because the original amount was incorrect and thus the second amount only reflects the amount of the monies that were properly owed.

In addition, the Plaintiff claims that an adverse employment action occurred when the Defendant unilaterally set the Plaintiff's retirement date to occur in less than 30 days because this precluded the Plaintiff from providing sufficient notice under his union contract to receive his benefits as a lump sum.  On the other hand, the Defendant claims

that this was not an adverse employment action because it was advised by the New York State Comptroller on July 19, 2007, that it was to provide a separation date within 30 days.

The Court finds there to be genuine issues of material fact as to whether the alleged retaliatory acts of lowering the Plaintiff's retirement benefits and not providing him with the opportunity to receive a lump sum payment were adverse employment actions. As set forth above, adverse employment actions can be a reduction in pay. The Court finds that the lowering of the Plaintiff's retirement benefits and increased length of payout can both be found by a fact finder to constitute adverse actions.

### 3. Causal Connection

The crux of the dispute is whether or not the Defendant actually retaliated against Giacopelli for exercising his First Amendment rights to free speech. A causal connection between the speech and adverse action must exist "so that it can be said that [the] speech was a motivating factor in the determination." Morris, 196 F.3d at 110. A causal connection between the protected speech and the adverse employment action can be established "either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Id. The plaintiff may also rely on the temporal proximity of the protected action and the adverse employment action. See Donovan, 547 F. Supp. 2d at 218 (citing Woods v. Enlarged City Sch. Dist., 473 F. Supp. 2d 498 (S.D.N.Y. 2007); Raniola v. Police Commissioner William Bratton, 243 F.3d 610, 626 (2d Cir. 2001)). In determining the existence of a causal connection between the

protected speech and the alleged retaliatory action, the Court is mindful that "[c]ausation generally is a question for the finder of fact." DePace, 183 F. Supp. 2d at 638.

### a. Unilateral Retirement Filing

With regard to the unilateral retirement filing, the Court must decide if there **is** a question of fact as to the existence of a causal connection between the protected activity and the adverse employment action. In other words, the Court must decide whether the Plaintiff was permanently injured and thus permissibly forced into retirement by the Defendant pursuant to the NY Gen. Mun. Law or, whether the Plaintiff was wrongfully forced into retirement as retaliation for his union and campaign activities.

The Defendant argues that, pursuant to NY Gen. Mun. Law 207-c, it was entirely permissible and allowable for the Defendant to make an application for the Plaintiff's retirement for a disability incurred in the performance of his duty on or about June 15, 2006, some 14 months after the Plaintiff's injury. The Defendant also claims that the Plaintiff cannot point to any evidence demonstrating a discriminatory motive. On the other hand, the Plaintiff claims there is circumstantial evidence that the Defendant forcefully retired him solely because of his protected activity. In particular, the Plaintiff points to the fact that he was informed a desk job was available and that he therefore could have remained employed by the Defendant, although in a different position. The Plaintiff also points to other instances where he was retaliated against for his union and political activities, as part of the Defendant's "longstanding unwritten policy of discriminating against officers who engage in heightened union activities as compared to those officers who are members of the union in name only." (Complt. at ¶ 9.)

Although the Defendant disputes the admissibility of the statements underlying the Plaintiff's allegations as hearsay, it fails to satisfy the burden of showing that no genuine issue of material fact exists. Viewing the facts in the light most favorable to the non-moving party, the Court finds that there is a question of fact as to the causal connection between Giacopelli's First Amendment activities and the unilateral retirement filing.

Giacopelli has introduced sufficient evidence of possible retaliation against him in the past with regard to his union and political activities. The Plaintiff avers that he began his PBA activities in 1989 year, and that from this date until June 2006, the date of the first viable adverse employment action, there were various instances which demonstrated that he was being retaliated against for these activities. For example, comments made by Trustee Hennesy, among others, suggest that in order to be promoted, officers were forced to give up their union positions. (Complt. at ¶ 10) ("Plaintiff was first told in or about February 1999 that he would have to resign his position as a member of the PBA Executive Board in order to be promoted to the position of Sergeant); (Complt. at ¶ 21) ("Hennessy became very angry, began cursing while speaking to Plaintiff, and told Plaintiff that the PBA is a 'very unprofessional group.'"). See Donovan, 547 F. Supp. 2d at 218 (finding in a case arising from the very same facts that there was sufficient evidence to infer a causal connection where Malverne officials suggested that candidates must quit union positions to be promoted). The Plaintiff has also presented circumstantial evidence that the Village Trustees promoted lower ranking officers who "did not participate in the Union's campaign activities on behalf of Chernoff." (Complt.

at ¶ 26.)  Moreover, he has introduced evidence of specific instances of other retaliation, namely the Defendant's failure to promote him to Lieutenant.

While the early acts of retaliation are untimely, as explained above, they can nevertheless be considered as evidence of the Defendant's custom or practice of discrimination and/or retaliating against individuals on the basis of their First Amendment Rights.  See Nat'l RR. Passenger Corp. v. Morgan, 536 U.S. 101, 112, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); (Complt. at ¶ 9.)  Although a significant time period lapsed between the first instance of the Plaintiff's protected speech and the retirement-related retaliatory action, the entire course of events evidences an ongoing battle between the Plaintiff and members of the Department with regard to his union and political activities.  Assuming the Plaintiff's allegations to be true, there is a sufficient basis for a reasonable jury to find a causal link between the Plaintiff's speech and the Defendant's alleged retaliatory action.  See Chertkova v. Conn. Life Ins., 92 F.3d 81, 90 (2d Cir. 1996) (stating that the sequence of events is important in determining the existence of a causal connection in retaliation claim).

In addition, there is a temporary proximity between many of the protected actions and the untimely acts of retaliation.  For example, when Giacopelli resigned as PBA Vice President, he received a promotion to rank of Sergeant shortly thereafter.  In addition, Giacopelli alleges that his relationship with Trustee Hennessy deteriorated weeks after the election (Giacopelli Dep. at 22-23) and that Trustee Hennessy threatened him after supporting his challenger in the election.  Donovan, 547 F. Supp. 2d at 219 (finding prima facie evidence of a causal connection where "political activities took place two months before" promotion was denied (citing Das v. Our Lady of Mercy Med. Ctr., 00

Civ. 2574, 2002 U.S. Dist. LEXIS 7771, at *36 (S.D.N.Y. Apr. 30 2002) (aff'd 56 Fed. App'x. 12 (2d Cir. 2003)))).   The Plaintiff was also passed over for promotion to Lieutenant in May 2005, just two months after the election.

Although the Defendant claims that it acted within its statutory authority and lawful discretion to file the Plaintiff's retirement papers, this justification does not sufficiently undermine the Plaintiff's *prima facie* case that a causal connection exists between his protected First Amendment activities and the alleged adverse employment action.  "Acts that are otherwise authorized by law can take on a different character when executed with a retaliatory motive.  In other words, Plaintiff is not objecting to the legitimacy of the procedure followed, but rather the alleged retaliatory motives undergirding its application to him."  Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 260 (E.D.N.Y. 2005).  Cf. Lundy v. Town of Brighton, 732 F. Supp. 2d 263, 277 (W.D.N.Y. 2010) ("As to her retirement, plaintiff does not appear to allege, nor is there any evidence, that defendants' submission of her retirement papers was in itself wrongful.").  Accordingly, the unilateral retirement filing raises questions of fact for the jury.

Thus, there is sufficient evidence in the record to infer that Giacopelli may have been forced to retire because of retaliatory animus toward him, so that the Defendant's motion for summary judgment in this regard is denied.

### b.  Retirement Benefits

The Court must also determine whether a question of fact exists as to the causal connection between Giacopelli's protected activities and the actions taken with regard to his retirement benefits.  The Plaintiff makes two allegations in this vein.  First, he alleges

that the Defendant unilaterally set his retirement date to occur within 30 days, so that under his union contract, the Plaintiff could not timely file a request to receive terminal leave pay in one lump sum. Rather, the Plaintiff claims he was forced to accept payment of the sum over a two-year period. Second, the Plaintiff contends that the Defendant recalculated his retirement benefits to include a lower amount, by reducing the amount of time that he was allegedly due for accumulated sick leave and vacation time. (Complt. at ¶¶ 41-46.)

However, in this regard, the Court finds that the Defendant is entitled to summary judgment on any Section 1983 claims arising from these actions. The Defendant has sufficiently demonstrated that it would have taken the same adverse actions against the Plaintiff regardless of the Plaintiff's speech.

As to the Plaintiff's retirement benefits, John Arresta has declared under penalty of perjury that his subordinate, Lieutenant Richard Firsenda, compiled the necessary information to calculate Giacopelli's terminal leave benefit, which Arresta then provided to Terry Emmel, the Village Clerk. (Arresta Decl. at 1.) Arresta further declared that it was subsequently brought to his attention that Giacopelli had been on disability leave pursuant to New York Gen. Mun. Law §207-c since his line of duty accident on April 15, 2005, so that sick, vacation, and holiday bonus pay did not accrue during that period. Thus, according to Arresta, it was necessary to recalculate Giacopelli's hours of sick and vacation time. In other words, "[t]he change in computation of the terminal leave benefit was simply an application of the controlling statute, and was in no way intended to diminish Sgt. Giacopelli's compensation for improper motives." (Arresta Decl. at 2.)

Thus, the Court finds that, in light of the documentation put forward by the Defendant, it has sufficiently demonstrated that it would have taken the same action in connection with the calculation of the Plaintiff's retirement benefits regardless of the Plaintiff's speech and that there were no retaliatory motives as to this contention. <u>See</u> Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007) ("summary judgment is not appropriate unless the defendant establishes as a matter of law that he would have taken the same adverse employment action even absent the protected conduct.z')

In addition, the Defendant has submitted a letter from the New York State Comptroller, dated July 19, 2007. (Def. Exhibit F.) This letter expressly states that "[a] member's retirement cannot begin nor can any retirement option take effect until he is removed from your payroll. . . . The member should be removed from your payroll *within 30 days of this letter*." Thus, there is no dispute of fact over whether the action taken by the Defendants with regard to setting the Plaintiff's date of retirement was causally connected to any alleged retaliation. The Court finds that, in light of this letter, the Defendant has sufficiently demonstrated that it would have taken the same action in connection with the Plaintiff's retirement date regardless of the Plaintiff's speech, and, once again, there were no retaliatory motives.

Accordingly, because the Defendants have sufficiently rebutted any inference that the calculation of Giacopelli's retirement benefits and the setting of his retirement date were the result of retaliatory animus toward him, the Court finds that the Defendant's motion for summary judgment in this regard should be granted.

**D. As to Plaintiff's State Law Claims**

As a preliminary matter, the Defendant asserts that all of the Plaintiff's state law claims are barred by NY Gen. Mun. Law § 50-i. In opposition, the Plaintiff argues that N.Y. Gen. Mun. Law § 50-i is not applicable because that provision does not apply to discrimination claims. The Court agrees that Gen. Mun. Law § 50-i is not applicable here because it does not govern discrimination claims. Section 50-i "is confined to claims for personal injury, wrongful death or damage to property and does not apply to discrimination claims." Parry v. Tompkins County, 260 A.D.2d 987, 988, 689 N.Y.S.2d 296, 297 (3d Dep't 1999).

**1. New York Labor Law § 201-d(2)(d) Claim**

In this case, the Plaintiff advances three state law claims, the first of which is New York Labor Law § 201-d(2)(d). The Plaintiff asserts that the Defendant allegedly discriminated against the Plaintiff "in that they constructively discharged Plaintiff or otherwise discriminated against Plaintiff in the compensation, terms, conditions and privileges of employment." (Complt. at ¶ 51.) Labor Law § 201-d(2)(d) provides that:

> Unless otherwise provided by law, it shall be unlawful for any employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of . . .
>
> d. an individual's membership in a union or any exercise of rights granted under Title 29, USCA, Chapter 7 or under article fourteen of the civil service law.

In sum, the Plaintiff asserts this state law cause of action based on the Defendant's alleged retaliation for Giacopelli's union activities.

For the same reasons set forth above in connection with the Plaintiff's Section 1983 claim, the Courts finds that genuine issues of material fact exist regarding the

Plaintiff's Labor Law claim, insofar as the Plaintiff claims that because of his membership in the PBA, the Defendant wrongfully discharged him by unilaterally filing his retirement papers.

However, the Court finds that no genuine issues of material facts exist with regard to the setting of the Plaintiff's retirement date and the calculation of his retirement benefits. As explained above, the Defendant claims that the setting of the Plaintiff's retirement date was not discretionary and was in fact ordered by the New York State Comptroller to occur within 30 days. Therefore, the Court agrees with the Defendant that as a matter of law, "it did not act arbitrarily, but within the confines of the State's requirements." (Def. Reply. Mem. at 3.) In addition, the Defendant argues that the reduction in Giacopelli's retirement benefits was attributed to a recalculation conducted according to established policy and procedure. In light of the proof put forth by the Defendant, the Court finds that there can be no causal connection between the Plaintiff's union activities and either of these alleged discriminatory acts.

## 2. New York State Civil Service Law § 209-a

The Plaintiff also asserts a state law claim pursuant to NYS Civil Service Law ("CSL") § 200 *et seq.*, also known as the Taylor law. Section 209-a of the New York Civil Service Law makes unlawful various practices by a public employer. In the Complaint, the Plaintiff makes no attempt to specify which subsections of this law he is proceeding under. The Plaintiff generally alleges that the Defendant violated CSL § 209-a "by interfering with Plaintiff's rights to belong and participate in the Malverne PBA and by discriminating against Plaintiff for the purpose of discouraging Plaintiff's membership in, and participation in the activities of, the Malverne PBA." (Complt. at ¶

50.)  Thus, it appears that the Plaintiff is asserting claims pursuant to subsection (1)(a),

which specifically deals with interference by an employer with the exercise of a public

employee's rights to form, join, and participate in any employee organization of their

own choosing, and subsection (1)(c), which specifically deals with discrimination by an

employer "for the purpose of encouraging or discouraging membership in, or

participation in the activities of, [an] employee organization."  CSL §§ 209–a(1)(a) and

(c).

The Court finds that the Plaintiff's claims based on these particular sections of the

Taylor law ultimately cannot survive summary judgment.  CSL § 205(5)(d) provides the

New York State Public Employment Relations Board ("PERB") with authority to issue

cease and desist orders to prevent improper practices under § 209-a and to take

affirmative action.  More importantly, Section 205(5)(d) also provides that PERB "shall

exercise exclusive nondelegable jurisdiction of the powers granted to it by this

paragraph."  See Ifill v. New York State Court Officers Ass'n, 655 F. Supp. 2d 382, 392

(S.D.N.Y. 2009); Westchester County Dep't of Pub. Safety Police Benevolent Ass'n., 35

A.D.3d 592, 595, 828 N.Y.S.2d 412, 414 (2d. Dep't 2006) ("Although we disagree with

the Supreme Court's standing determination, we agree with its conclusion that this action

nevertheless must be dismissed because the plaintiff's improper labor practice charge is

within the exclusive jurisdiction of the Public Employment Relations Board"); See also

Zuckerman v. Bd. of Educ. of City Sch. Dist. of City of New York, 44 N.Y.2d 336, 405

N.Y.S.2d 652, 376 N.E.2d 1297, 1300 (1978) ("[A]n improper labor practice ... is within

the exclusive jurisdiction of PERB.").

There appears to be only one exception to PERB's exclusive jurisdiction where the claim is for a breach of the duty of fair representation. See DeCherro v. Civil Serv. Employees Ass'n, Inc., 60 A.D.2d 743, 400 N.Y.S.2d 902, 903 (1977). However, the Plaintiff clearly articulates his claim as one of interference with and discrimination relating to his participation in the Malverne PBA, and this exception is not applicable.

Therefore, even though there is a viable Section 1983 cause of action in this case, this Court may not exercise supplemental jurisdiction over the Plaintiff's CSL § 209-a cause of action, because it is a claim over which an administrative agency has exclusive jurisdiction. See Ifill, 655 F. Supp. 2d at 392. Accordingly, the Plaintiff's Section 209-a claim is dismissed.

### 3. New York State Human Rights Law

Finally, the Plaintiff asserts a claim based on an alleged violation of the New York Human Rights Law, codified in New York Executive Law § 296, because "the Defendant discriminated against Plaintiff in his compensation, terms, conditions and privileges of employment based on his disability." (Complt. at ¶ 52.)

The Second Circuit has determined that a Plaintiff's discrimination claims under the New York State Human Rights Law are subject to the burden-shifting analysis applied to discrimination claims under Title VII. See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d. Cir. 2010); Dawson v. Bumble & Bumble, 398 F.3d 211, 216-17 (2d Cir. 2005). Under this analysis, a plaintiff can establish a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an

adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination.  Id. at 216.

If a *prima facie* case of discrimination is established, the burden shifts to the defendant, who must offer some legitimate nondiscriminatory reason for the adverse action.  Id.  "If the defendant proffers such a reason, the presumption of discrimination . . . drops out of the analysis, and the defendant will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  Id. (internal quotation marks and citation omitted).  The plaintiff must demonstrate**,** by a preponderance of the evidence**,** that the legitimate reason offered by the defendant is actually **a** pretext for discrimination.  Id.

Under the New York State Human Rights Law, it is an unlawful discriminatory practice for an employer to discharge or to discriminate against an individual in compensation or in terms, conditions or privileges of employment because of a disability.  A "disability" is a "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law §§ 292(21), 296(1)(a).

In the present case, although not clearly stated, it appears that the Plaintiff is claiming that the Defendant discharged the Plaintiff and recalculated his retirement benefits only because of his "disability," which was an injury he suffered in the line of duty.  The Court finds that summary judgment on this cause of action is appropriate, but only with regard to the calculation of benefits and the timing of his retirement.

First, with regard to the calculation of the retirement benefits, the Court again finds that even assuming, arguendo, that the Plaintiff has established a *prima facie* case of discrimination, the Defendant has sufficiently rebutted this presumption by proffering a legitimate, nondiscriminatory reason for the adverse action. Moreover, the Plaintiff has failed to demonstrate that the legitimate reason offered by the Defendant is actually **a** pretext for discrimination. The Plaintiff has failed to put forward any evidence to demonstrate that the reduction was not due to clerical error by the Defendant. The Plaintiff admits that on August 16, 2007, the Board of Trustees passed a resolution authorizing payment to the Plaintiff of retirement benefits as calculated by the Department. (Pl. 56.1 at ¶ 8.)

Second, with regard to the timing of his retirement, the Court finds that the Defendant has also sufficiently rebutted any presumption of discrimination. The Defendant's proof of a letter from the New York State Comptroller mandating that it set the Plaintiff's retirement date to be effective within 30 days provides a legitimate, nondiscriminatory reason for the adverse action. The Plaintiff has failed to demonstrate that the legitimate reason offered by the Defendant is actually **a** pretext for discrimination.

However, with regard to the actual "discharge" stemming from the Defendant's unilateral filing of the Plaintiff's retirement papers, the Court finds that the Plaintiff has established a *prima facie* case of discrimination under the New York Human Rights Laws, thereby defeating a motion for summary judgment on that ground. The Defendant filed the retirement papers pursuant to a New York statute, which specifically permits the Village to make an application for retirement for disability incurred in the performance of

duty. See N.Y. Gen. Mun. Law. § 207-c(2) ("Payment of the full amount of regular salary or wages . . . shall be discontinued with respect to any policeman who is permanently disabled as a result of an injury or sickness incurred or resulting from the performance of his duties . . .If application for such retirement allowance or pension is not made by such policeman, application therefor may be made by the head of the police force or . . . local legislative body of the municipality by which such policeman is employed."). There appears to be no dispute as to whether the Plaintiff's injury qualified him as "disabled" under the statute. See Def. Ex. D, Letter from Russell L. Miller, M.D., May 11, 2005 ("He is totally disabled from work."); Def. Ex. E, Letter from the Office of the New York State Comptroller, July 17, 2007 ("It is hereby found that the applicant is permanently incapacitated for the performance of duties."). In addition, the Plaintiff does not appear to deny that the Defendant was authorized under New York Law to submit that application.

Instead, the dispute centers on whether the Defendant had provisions for "light duty" or "desk duty" for police officers who were unable to perform full duty due to injury. The Defendant denies that it had such a position available, although the Plaintiff claims that he specifically requested one and was told that one was available. (Giacopelli Dep. at 50, 54-55). It appears that the Defendant claims it had every right to follow the provisions of N.Y. Gen. Mun. Law. § 207-c(2) when there was no accommodation possible because it did not have provision for "light duty" or "desk duty" for police officers who were unable to perform full duty due to injury. On the other hand, the Plaintiff appears to claim that the Defendant did not have a right to utilize the provisions

of N.Y. Gen. Mun. Law. § 207-c(2) to unilaterally file his retirement papers when there was a possible accommodation available.

Under the NY Human Rights Law, the employer must consider the feasibility of all possible accommodations. Most courts have held that an employer has an independent duty to reasonably accommodate an employee's disability if the employer knew or reasonably should have known that the employee was disabled, whether or not a specific request has been made. See Phillips, 66 A.D.3d at 189, 884 N.Y.S.2d at 383; Brady v. Wal–Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008). Therefore, a question of fact exists as to whether the Defendant had an independent duty to reasonably accommodate the Plaintiff's disability and whether a "desk duty" provision was in fact available.

Further, there is authority that under the New York State Human Rights Law, an employer has a responsibility to investigate the feasibility of an accommodation only after an employee makes a specific request. See Pimentel, 29 A.D.3d at 148, 811 N.Y.S.2d 381. However, even as to this issue, there is a question of fact as to whether the Plaintiff made such a request. (Pl. 56.1 at 8(g) ("during these proceedings, Plaintiff specifically requested of Trustee Malone that Plaintiff be placed into the position of Deputy Inspector."). Cf. Matter of Fallon v. Triborough Bridge & Tunnel Auth., 259 A.D.2d 377, 378, 687 N.Y.S.2d 123 (1st Dep't 1999) (In his 12–year absence on disability leave, petitioner never sought to return to work with or without accommodation . . .This being the case, there is no ground to conclude that respondent violated the New York State Human Rights Law (Executive Law § 296), prohibiting disability-based discrimination.).

Moreover, the fact that the Defendant can cite to statutory authority to provide a basis for its actions may not change the result. A "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.' " Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (quoting Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).

In sum, the Court finds that the Defendant's motion for summary judgment on the New York State Human Rights Law cause of action is appropriate, only with regard to the calculation of benefits and the timing of his retirement. As to the Plaintiff's New York State Human Rights Law claim with regard to the actual "discharge" stemming from the Defendant's unilateral filing of the Plaintiff's retirement papers, the Defendant's motion for summary judgment is denied.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Plaintiff's 42 U.S.C. § 1983 claim was timely asserted; **and it is further**

**ORDERED**, that the Plaintiff's New York State Civil Service Law § 209-a is dismissed**; and it is further**

**ORDERED,** that the Defendant's motion for summary judgment as to the other causes of action is denied, with regard to the Plaintiff's claims as to the unilateral retirement filing. As to the Plaintiff's claims with regard to the recalculation of his

retirement benefits and the effective date of his retirement, the Defendant's motion for summary judgment dismissing such claims is granted; **and it is further**

**ORDERED,** that the parties are directed to appear before the Court on January 5, 2012 at 9:00 am for a pre-trial conference in Courtroom 1020. Counsel shall have the authority to discuss settlement at this conference.

**SO ORDERED.**

Dated: Central Islip, New York
December 12, 2011

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge